**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROSATI'S FRANCHISE SYSTEMS, INC., ) | |
| an Illinois corporation, ) | |
| ANTHONY ROSATI, DAVID ROSATI, ) | |
| STEPHEN ROSATI, GEARY ROSATI, ) | |
| RICHARD ROSATI, JOANNE ROSATI ) | |
| CZERNEK, and LISA ROSATI SUMA, ) | |
| ) | |
|      Plaintiffs, ) | |
| ) | |
|      v. ) | No. 05 C 3146 |
| ) | |
| FREDERIC ROSATI, MICHAEL ROSATI, ) | |
| WILLIAM ROSATI, and JEFFREY ROSATI, ) | |
| ) | |
| ) | |
|      Defendants. ) | |

**MEMORANDUM OPINION**

Before the court are two motions: defendants' motion to dismiss the amended complaint and plaintiffs' motion for reassignment of another action based upon relatedness. For the following reasons, defendants' motion to dismiss is granted in part and denied in part, and plaintiffs' motion for reassignment is denied.

**BACKGROUND**

Plaintiffs and defendants are involved in an unfortunate family quarrel over the marketing of an extensive chain of pizza businesses. The complaint alleges the following facts, which we take as true for purposes of this motion.

The corporate plaintiff, Rosati's Franchise Systems, Inc. ("RFSI"), is a family-owned entity. At the times relevant to the complaint, RFSI was in the business of "operating, franchising, and/or licensing" Rosati's Pizza restaurants. (Complaint ¶ 1.) Since 1964, there have been various "Rosati's" and "Rosati's Pizza" restaurants, primarily in Illinois, but in recent years also in several other states (such as Arizona). RFSI has federal trademark registrations for "Rosati's Pizza" and for "Rosati's Authentic Chicago Pizza Est. 1964" and the associated logo (collectively, the "Rosati marks"), in connection with restaurant services.[1]

RFSI currently has ten shareholders, all of whom are related family members, each of whom is one of the ten directors of RFSI and owns ten percent of the stock. For a number of years, those director/shareholders have been divided into two groups. The majority group consists of the individual plaintiffs: Anthony Rosati, David Rosati, Stephen Rosati, Geary Rosati, Richard Rosati, Joanne Rosati Czernek, and Lisa Rosati Suma. The minority group is comprised of three of the defendants: Frederic Rosati, Michael Rosati, and William Rosati. Jeffrey Rosati, the fourth defendant, is the brother of Frederic Rosati. He is a certified public accountant who does work for the minority shareholders and does not have any ownership interest in RFSI.

---

[1] Those registrations were issued in 1995.

Around 1998, disputes arose between RFSI's majority and minority director/shareholder groups. The shareholders decided to enter into a written "Agreement Concerning Exclusive Territorial Rights," pursuant to which they agreed that RFSI would cease its franchising activities and instead issue licenses to each of the ten shareholders to use and sublicense the Rosati marks and trade secret recipes.[2] The primary focus of the shareholders' agreement and of the licenses was the establishment of exclusive territories for the operation of Rosati's Pizza restaurants. The relevant language of the licenses will be quoted and discussed in detail infra.

According to plaintiffs, subsequent to the execution of the licenses, the ten shareholders created a marketing cooperative called Rosati's Marketing Cooperative (the "Co-op") which was used "to advertise and market the individual pizza stores and restaurants which had been franchised by RFSI or sublicensed by the individual RFSI shareholders pursuant to the License Agreement." (Id. ¶ 14.) The Co-op "was used by all ten shareholders/directors to advertise and market the 140 Rosati's pizza stores and restaurants for which various of the shareholders, including Plaintiffs, either held the subfranchise or had sublicensed." (Id. ¶ 15.) In 1999, "with the consent of all ten Rosati's shareholders/directors, a website was created" that used the

_____

[2]/ The existing franchises were divided among the various shareholders.

internet domain name "rosatispizza.com" and listed the names of all Rosati's pizza stores and restaurants nationwide. (Id.) Evidently, neither RFSI nor any of the other plaintiffs acquired ownership of that domain name; rather, a third party owned the domain name.

In April 2005, without the knowledge of the majority shareholders, the minority shareholders purchased and registered the "rosatispizza.com" domain name, as well as the "rosatis.com" domain name, from the third-party owners. Attached to the complaint as Exhibit E are the search results of a "WHOIS" database search of the domain name registrar Network Solutions, LLC.[3] The search results reflect that "rosatispizza.com" and "rosatis.com" were registered, at the time the complaint was filed, to "Rosati's" in Lisle, a restaurant owned by one or more of the minority shareholders. The administrative contact is listed as "Rosati's" with an e-mail address of jrosaticpa@comcast.net, which is defendant Jeffrey Rosati's e-mail address.

The following month, disagreements between the majority and minority shareholders came to a head. On May 10, 2005, the minority shareholders' attorney sent a letter to plaintiff Anthony Rosati concerning those disagreements. The letter stated that Frederic, Michael, and William Rosati, the "Rick Rosati Group,"

---

[3]    It is unclear from the documents on what date this search was performed.

consistent with "the inability" of the Co-op to "coordinate efforts among all shareholders," would take certain actions, including the following:

> All Websites owned and controlled by the Rick Rosati Group (including the Website with the domain name "rosatispizza.com," which was recently purchased by the Rick Rosati Group) will be revised. Among other revisions, they will only list the locations owned and controlled by the Rick Rosati Group. Our clients intend to make these revisions on May 13, 2005. Our clients request that their locations be deleted from all Websites owned and controlled by you and the other shareholders.

(Complaint, Ex. F, Letter from Michael C. Deutsch to Anthony Rosati, at 4.) On May 13, 2005, the minority shareholders did just that; the ninety-four pizza stores or restaurants that are subfranchised or sublicensed by the majority shareholders were eliminated from the restaurant location listings on the Web site, leaving only the listings for locations with ties to the minority shareholders.

Plaintiffs allege that as a result of the removal of the listings for their restaurants, "customers and licensees of those stores and restaurants have expressed confusion and anger, which has resulted in a substantial loss of business and which seriously threatens the business of RFSI and of the [individual plaintiffs], as well as the Rosati's Trademarks, brand name and the goodwill that has been generated for more than 40 years." (Id. ¶ 17(e).) They also allege that because the listings for their restaurants were removed, they were "forced to pull commercials and other

advertisements because those 94 stores and restaurants are not listed on the Rosati's website that is referred to in those commercials and advertisements." (Id. ¶ 17(f).)

It is also alleged that defendants have used the Web site to "disparage" those restaurants owned or controlled by plaintiffs. (Id. ¶ 17(g).) At the time the complaint was filed, when a visitor to defendants' Web site navigated to the listings for defendants' Arizona restaurants, the following message appeared:

> Note to our valued customers:
> In 1986 Rick Rosati, Mike Rosati and long time employee Scott Selke (the Original Valley Owners) opened the first Rosati's Pizza in the Phoenix area. The three Original Valley Owners own to this day all Arizona locations listed on this site. We brought with us the same high quality food and high operating standards that we used for years in Chicago.
> . . .
> In 2001 a second group started licensing the Rosati name to independent owner operators. Due to the high number of complaints received at this web site in relation to locations controlled by the second group, we want to make it clear that the Original Valley Owners have no ownership or authority over locations that use the Rosati name that are not listed on this web site. Any complaints for locations not listed on this web site should be directed to that location and should be resolved by the parties that own that location.
> We apologize for any confusion.

(Complaint, Ex. I.) In plaintiffs' view, defendants "have commercially disparaged and damaged [plaintiffs] by stating to customers, distributors, vendors, sub-licensees, potential sub-licensees and the general public that the stores controlled by [plaintiffs] are 'knock offs,' that those members are selling phony

sublicenses and have no right to sublicense the Rosati's Trademarks or Recipes, and that the stores controlled by [defendants] are the only 'genuine' Rosati's pizza restaurants." (<u>Id.</u> ¶ 17(i).)

On May 17, 2005, in accordance with RFSI's bylaws, RFSI's president, Anthony Rosati, gave notice of a special RFSI board of directors meeting to be held on May 20, 2005. The meeting took place, and all ten director/shareholders were present. Among other things that occurred at the meeting, seven of the ten RSFI directors (presumably plaintiffs) voted to authorize the filing of this action. (<u>Id.</u> ¶ 18.)

Plaintiffs filed this action on May 26, 2005. The verified complaint contains four federal-law claims: trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1) (Count I); trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c)(1) (Count II); violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (Count III); and unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1) (Count IV).

Plaintiffs allege in their federal claims that defendants have infringed on and diluted the Rosati marks through their "unauthorized use" of the Web site and domain names "for their own personal benefit and to the exclusion and detriment of" plaintiffs. (Complaint ¶¶ 20, 25.) It is alleged that defendants' use of the Web site and domain names as well as their "false and misleading

designations of origin and misrepresentations of fact" cause consumer confusion. (<u>Id.</u> ¶ 31.) Moreover, plaintiffs allege that in acquiring and using the domain names, defendants "acted in bad faith with the intent of profiting from" the Rosati marks by diverting customers from plaintiffs' restaurants. (<u>Id.</u> ¶ 28.)

Several state-law claims are also asserted: violation of the Illinois Anti-Dilution Act, 765 ILCS 1036/65(a) (Count V); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 (Count VI); breach of contract (Count VII); and breach of fiduciary duties (Count VIII). Plaintiffs seek injunctive and other equitable relief, compensatory damages, punitive damages, and attorney's fees.

A day after filing the complaint, plaintiffs moved for a temporary restraining order and/or a preliminary injunction, seeking to enjoin defendants from using the Rosati marks and the domain names in a manner that was likely to cause confusion. Shortly thereafter, the motion was withdrawn pursuant to an agreement between the parties that the Web site would list both plaintiffs' and defendants' restaurant locations, at least for the time being.

Defendants now move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Plaintiffs move for reassignment of a case that was brought against them by defendants, No. 05 C 6902, which was filed on December 7, 2005 and is currently pending before our colleague Judge St. Eve. We informed the parties that we would first address defendants' motion to dismiss and then consider plaintiffs' motion.

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Hentosh v. Herman M. Finch Univ. of Health Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999); <u>Janq v. A.M. Miller & Assocs.</u>, 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir. 1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

## A.    <u>Jeffrey Rosati</u>

Before discussing defendants' arguments for dismissal, we will address the matter of the defendant Jeffrey Rosati. The only conduct that is alleged as to this defendant is that the other defendants "caused" him "to record" the domain names

"rosatispizza.com" and "rosatis.com" with the domain name registrar, "despite the fact that Jeffrey Rosati is not, and never has been, affiliated with the Rosati's pizza stores and restaurants or with RFSI." (Complaint ¶ 17(a).) Paragraph 17(a) cites to Exhibit E, which are copies of the search results (referred to in our discussion of the alleged facts, underline supra) of a "WHOIS" database search of the domain name registrar Network Solutions, LLC for the domain names "rosatispizza.com" and "rosatis.com." Contrary to the implication of paragraph 17(a), these search results do not indicate that Jeffrey Rosati is the registrant of the domain names; rather, they indicate that the registrant is "Rosati's" in Lisle, which is controlled by the other three defendants. The only reference to Jeffrey Rosati in the search results is the listing of his e-mail address as the "administrative contact" for the registrant Rosati's.

There are no allegations that Jeffrey Rosati used the Rosati marks or that he registered the domain names. Rather, the allegation is that Jeffrey Rosati "recorded" the domain names, but the Anticybersquatting Consumer Protection Act does not create liability for "recording" a domain name; it prohibits unauthorized registration, trafficking, or use. See 15 U.S.C. § 1125(d)(1)(A)(ii). We do not believe that the act of "recording" a domain name, apart from registering a domain name, is something that occurs. Plaintiffs seem to be using the term "record" as a

synonym for "register," but the exhibit attached to plaintiffs' complaint shows that the registrant was Rosati's of Lisle, not Jeffrey Rosati.

Because plaintiffs fail to allege any conduct on the part of Jeffrey Rosati that would form the basis of any of their claims, the complaint will be dismissed as against defendant Jeffrey Rosati.

## B.    Defendants' Motion to Dismiss

### 1.    Federal Claims

#### a.    Counts I, II, and III

Counts I, II, and III of the complaint allege Lanham Act violations: trademark infringement, trademark dilution, and cybersquatting in violation of 15 U.S.C. §§ 1114(1), 1125(c)(1), and 1125(d).

To prove infringement under § 1114(1), plaintiffs must show that (1) their marks are registered; (2) defendants used the marks in commerce without plaintiffs' consent; and (3) defendants' unauthorized use is likely to confuse consumers or deceive the public. See S Indus. v. Stone Age Equip., Inc., 12 F. Supp. 2d 796, 803 (N.D. Ill. 1998).

Trademark dilution law, on the other hand, protects distinctive or famous trademarks from certain unauthorized uses of the marks regardless of a showing of likelihood of confusion. See Panavision Int'l, L.P. v. Toeppen, 945 F. Supp. 1296, 1301 (C.D.

Cal. 1996).  To prove dilution under § 1125(c)(1), plaintiffs must show (1) their marks are famous; (2) defendants used the marks after the marks became famous; (3) defendants' use of the marks caused dilution of those marks; and (4) defendants' use of the marks was commercial and in commerce.  See Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 466 (7th Cir. 2000).

The elements of a cybersquatting[4] claim under § 1125(d) are (1) defendants have registered, trafficked in, or used a domain name; (2) the domain name is identical to or confusingly similar to marks owned by plaintiffs; (3) the marks were distinctive at the time of defendants' registration of the domain name; and (4) defendants have committed the acts with a bad faith intent to profit from plaintiffs' marks.  15 U.S.C. § 1125(d)(1).  "Bad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d)(1)(B)(ii).

Thus, authorized use of the marks is a defense to each of these claims.  Defendants argue that plaintiffs' claims fail as a matter of law because defendants have licenses to use the marks, and their use of the Rosati marks is therefore authorized.  "A

---

[4]/  "Cybersquatting" is a form of trademark dilution.  See 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:69.1, at 24-138 (2005).  It has been defined in various ways, some more broad than others, but the term generally refers to the abusive registration of an internet domain name. See 4 McCarthy § 25:77, at 25-285, 286 (2004).

trademark licensee's right to use of a mark is defined by the valid terms of the trademark license. That is, the license defines the boundaries of the licensee's permitted use." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:30, at 25-60 (2004). "Trademark license contract disputes are governed by the general rules of contract interpretation." 2 McCarthy § 18:43, at 18-69; cf. I.A.E., Inc. v. Shaver, 74 F.3d 768, 774 n.4 (7th Cir. 1996) (setting forth same principle with respect to copyrights) ("In conjunction with our review of the copyright claim, we may also determine related questions of contract law. When the defendants claim a license, as they have in this case, we may consider the validity or scope of that license and typically must apply the relevant state law in that determination.").

The license of defendant Frederic Rosati states in pertinent part:

> **THIS LICENSE AGREEMENT** (the "Agreement") is made and entered into this 30th day of September, 1998 by and among **ROSATI'S FRANCHISE SYSTEMS, INC.**, an Illinois corporation ("Company") and **FREDERIC ROSATI** ("Licensee"). . . .
> **WHEREAS**, Company is the sole and exclusive owner of all right, title and interest in and to the names "Rosati's Pizza" and all trademarks and service marks associated therewith (including, without limitation, U.S. Reg. Nos. 1,906,101 and 1,934,683) (collectively, the "Marks");
>
> **WHEREAS**, Company has created and developed certain restaurants operating under the name "Rosati's Pizza" ("Rosati's Pizza Restaurants") featuring pizza and other menu items for dine-in, carry-out and delivery service and utilizing certain distinctive trade secret recipes (the "Recipes"), ingredients and methods of preparing food;

**WHEREAS**, Licensee is a shareholder of Company; and

**WHEREAS**, Company has decided to cease the active franchising of Rosati's Pizza restaurants and desires to license to each of its shareholders, including Licensee, the right to use, and to sublicense the use of, the Marks and the Recipes in connection with the operation of Rosati's Pizza Restaurants, all of the foregoing rights being subject to the exclusive territorial rights granted previously, or that will be granted in the future, to licensees of the Marks and Recipes.

**NOW, THEREFORE**, in consideration of the mutual convenants and agreements contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  **Grant of License.** Subject to the terms and conditions of this Agreement, Company grants to Licensee and Licensee accepts from Company the perpetual, non-exclusive and royalty-free right and license to use, and to sublicense the use of, the Marks and Recipes to operate Rosati's Pizza Restaurants on the terms and conditions of this Agreement.

2.  **Exclusive Territories.** Licensee acknowledges and agrees that Company has granted franchises to third parties to operate Rosati's Pizza Restaurants and that such franchisees were granted exclusive territorial rights. Licensee further acknowledges and agrees that Licensee and the other shareholders of Company have entered into an Agreement Concerning Exclusive Territorial Rights (the "Territory Agreement") under which the Shareholders have agreed to certain procedures for granting exclusive territories to licensees and sublicensees of the Marks and Recipes.

Pursuant to the Territory Agreement the exclusive territory for each Rosati's Pizza Restaurant operated or sublicensed by Licensee pursuant to this Agreement shall be the area within a circle having such restaurant at its center and a radius of 5 miles by road. . . .
. . .
4.  **Ownership of Marks.** Licensee acknowledges that any unauthorized use of the Marks by Licensee shall constitute an infringement of Company's rights in and to the Marks and a breach of this Agreement. Licensee

acknowledges and agrees that all use of the Marks by Licensee and any goodwill established thereby shall inure to the exclusive benefit of Company and that this Agreement does not confer any goodwill or other interests in the Marks upon Licensee (other than the right to use and sublicense the use of the Marks in compliance with this Agreement.) Licensee shall not, directly, or indirectly, contest, deny or challenge the validity of the Marks or Company's rights therein. . . .

(Defendants' Mem., Ex. B, License Agreement of Frederic Rosati, at 1-2.) The licenses of Michael Rosati and William Rosati are identical in all material respects (as are those of plaintiffs).

Defendants maintain that the licenses gave them a broad grant to use the Rosati marks "to operate Rosati's Pizza Restaurants." In defendants' view, an essential part of the operation of the restaurants is advertising, and thus they are licensed to use the marks in advertising, including using the marks on their Web site.

Plaintiffs do not dispute that defendants are licensed to use the Rosati marks in advertising. Instead, plaintiffs argue that defendants were not authorized to use the Rosati marks as domain names for their Web site to the exclusion of plaintiffs, relying on three provisions of section 4 of the License Agreement, which we will call the "unauthorized use," "goodwill," and "challenge" provisions. None of the three, however, supports plaintiffs' position.

The clause "any unauthorized use of the Marks by Licensee shall constitute an infringement" does not tell us what uses are unauthorized. We must look to other provisions of the license to

determine what is unauthorized, and from reviewing the entire license, it appears that any use of the Marks which is not in connection with the operation of Rosati's pizza restaurants and/or which violates the exclusive territory arrangement would be unauthorized. The license does not place any other restrictions on the use of the Marks

Plaintiffs get no further with the provision that "all use of the Marks by Licensee and any goodwill established thereby shall inure to the exclusive benefit of Company and [] this Agreement does not confer any goodwill or other interests in the Marks upon Licensee." This is simply a statement of a basic rule of trademark law that a licensee's use of a mark cannot generate any ownership interest in the mark or the goodwill associated with it. See 2 McCarthy § 18:52, at 18-93 (2004). It is not a statement regarding which uses of the Rosati marks are and are not authorized. See Twentieth Century Fox Film Corp. v. Marvel Enters., 220 F. Supp. 2d 289, 293-94 (S.D.N.Y. 2002) (holding that the same provision "merely restates a basic tenet of trademark licensing law" and does "not create any specific obligations or restrictions" regarding counter-defendant/licensee's use of mark in a domain name).

The third provision, which prohibits licensees from contesting, denying, or challenging the validity of the Marks, is not relevant because defendants are not alleged to have contested, denied, or challenged the validity of the Rosati marks.

Thus, the License Agreements granted defendants broad rights in the Rosati marks and did not prohibit defendants from using the marks in domain names or from registering those domain names. Plaintiffs contend that defendants "needed to ask specific permission to use the RFSI Trademarks in such a manner as to only benefit them, to the exclusion of RFSI and its other shareholders." (Plaintiffs' Response at 13.)  There is no support for this argument either in the language of the licenses or in the relevant case law.[5]

The alleged wrongdoing of these licensees may fit within some other legal theory, but plaintiffs have failed to state claims for trademark infringement, trademark dilution, or cybersquatting. Accordingly, Counts I, II, and III of the complaint will be dismissed.

### b.  Count IV

Count IV is a claim for violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).  Contrary to defendants' argument, this claim is different from Counts I, II, and III because it does not necessarily involve unauthorized use of a protected mark.[6]

---

[5]  Plaintiffs do not cite any cases that discuss whether a licensee has an implied obligation not to disparage the licensor.  Furthermore, we note that any such obligation would only be to RFSI, the sole licensor; the individual plaintiffs/shareholders are not the licensor (in fact, they are licensees).

[6]  Defendants contend that this claim, along with the other two Lanham Act claims, "require[s] that the defendants' use of a protected mark or designation must be unauthorized."  (Defendants' Mem. at 5.)  In a footnote to this sentence, defendants state: "While Section 32(1) of the Lanham Act . . . creates a cause of action for a trademark registrant when a defendant uses a *registered* trademark without consent, **Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates**

"While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection." <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 28-29 (2003). Section 43(a) is not a "federal codification of the overall law of unfair competition," <u>id.</u> at 29, but it does prohibit the use in commerce of false or misleading descriptions of fact or representations of fact. Section 43(a) has two prongs: (1) a "trademark prong" for assertion of unregistered trademark, trade name and trade dress infringement claims; and (2) a "false advertising" prong. <u>See</u> 4 McCarthy § 27:10 , at 27-21 (2005); 15 U.S.C. § 1125(a)(1)(A), (B).

Defendants' argument for dismissal of Count IV is identical to their argument for the dismissal of Counts I, II, and III--they rely on the license, which is a defense to this claim only to the extent that the claim is based on the trademark infringement prong of the statute. Paragraph 31 of the complaint states that Count IV is based upon "[d]efendants' [alleged] misappropriation and unauthorized use of the internet domain names 'Rosatispizza.com'

---

**a cause of action for the unauthorized use in commerce of 'any word, term, name, symbol, or device, or any combination thereof . . . which -- is likely to cause confusion** . . . . Thus both causes of action require an unauthorized use of a mark or other designation that is likely to cause confusion . . . . " (<u>Id.</u> at 5 n.3 (boldface added).) The ellipsis that defendants employ after the word "thereof" in the boldfaced clause <u>supra</u> omits the following key language that directly refutes their contention that use of a mark is required for a violation of this section: ". . . or any false designation of origin, <u>false or misleading description of fact, or false or misleading representation of fact</u>." 15 U.S.C. § 1125(a)(1) (emphasis added).

and 'Rosatis.com' for their own benefit and to the exclusion of [plaintiffs], as well as their false and misleading designations of origin and misrepresentations of fact." To the extent that Count IV is premised on "misappropriation and unauthorized use" of the domain names and on "false and misleading designations of origin,"[7] it will be dismissed because defendants have a valid license to use the Rosati marks. To the extent that Count IV is premised on false or misleading description of fact or representation of fact, though, defendants present no argument that warrants dismissal. Among other things, the complaint alleges that defendants' Web site falsely implies that plaintiffs' pizza restaurants are knockoffs, that plaintiffs are selling phony sublicenses and have no right to sublicense the Rosati marks, and that defendants' restaurants are the only "genuine" Rosati's. The complaint also alleges that defendants' omission of plaintiffs' stores from the Web site is misleading. These allegations are sufficient to state a claim for false advertising under the Lanham Act.

## 2. <u>Standing</u>

Defendants also assert that the individual plaintiffs do not have standing to assert Lanham Act claims because they are mere non-exclusive licensees of the Rosati marks. The only remaining Lanham Act claim is the false advertising claim in Count IV for

---

[7] The standards for false designation of origin claims under 15 U.S.C. § 1125 are the same as for trademark infringement under 15 U.S.C. § 1114. <u>See</u> <u>Marvel</u>, 220 F. Supp. 2d at 297.

violation of 15 U.S.C. § 1125(a).  Defendants cite case law for the proposition that non-exclusive licensees do not have standing to sue for violations of 15 U.S.C. § 1114, trademark infringement, but those cases explicitly acknowledge that § 1125(a)  confers the right to sue on a broader range of plaintiffs--"any person who believes that he or she is or is likely to be damaged by" prohibited conduct.  15 U.S.C. § 1125(a)(1).

Defendants argue that the licenses prohibit the individual plaintiffs from bringing suit "to enforce the rights of [RFSI] in and to the Marks without the prior written consent of [RFSI]." (License Agreement ¶ 5.)  However, the false advertising claim is not a claim to enforce the Rosati marks, see discussion <u>supra</u>.  It is a claim for false or misleading statements of fact, which exists independently of the license agreements.  Defendants' argument is therefore rejected.

### 3.   <u>State-Law Claims</u>

Plaintiffs assert state-law claims for violation of the Illinois Anti-Dilution Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, and the Illinois Deceptive Trade Practices Act, as well as for breach of contract and breach of fiduciary duties.

Plaintiffs' claim for violation of the Illinois Anti-Dilution Act will be dismissed for the same reasons that the federal dilution claim will be dismissed.  There is no indication that the

state statute is analyzed differently. Moreover, defendants correctly point out that the protection of the anti-dilution statute does not extend to direct competitors of the defendants. Plaintiffs do not dispute that they compete with defendants, but argue that competitors may sue under the statute, relying on older decisions that are no longer the law in Illinois. "[U]nder modern state precedent, the protection of the Illinois Anti-Dilution statute is not available to competitors under Illinois case law." See AHP Subsidiary Holding Co. v. Stuart Hale Co., 1 F.3d 611, 619 (7th Cir. 1993); Decor Grates, Inc. v. Fararo, No. 92 C 6395, 1994 WL 532023, at *4 (N.D. Ill. Sept. 29, 1994) (noting that "the vast majority of recent cases, and of particular relevance here, the most recent Seventh Circuit cases, have held that the protection of the Anti-Dilution Act is not available to competitors under Illinois case law" and citing cases). Accordingly, Count V will be dismissed.

Defendants also argue that "dismissal of the Lanham Act causes of action should result in dismissal with prejudice" of plaintiffs' Illinois Consumer Fraud Act and Illinois Deceptive Trade Practices Act claims in Count VI. (Defendants' Mem. at 14.) We have held that plaintiffs sufficiently state a claim for false advertising under the Lanham Act, and those allegations suffice to state claims under the analogous state claims as well. Defendants' motion will be denied as to Count VI.

As for the breach of contract claim, plaintiffs allege that "[b]y virtue of their infringement of the Rosati's Trademarks and other unlawful conduct as described herein relating to the Rosati's Trademarks, [defendants] have materially breached" the License Agreements. (Complaint ¶ 39.) This claim fails for the same reason discussed <u>supra</u> with respect to the infringement claim: the License Agreements granted defendants broad rights in the Rosati marks and did not prohibit defendants from using the marks in domain names or from registering those domain names. Count VII will be dismissed.

The final count of the complaint is for breach of fiduciary duties. Paragraph 40 alleges that Frederic Rosati, Michael Rosati, and William Rosati breached their fiduciary duties to RFSI "by misappropriating corporate assets of RFSI (the Rosati's Trademarks) and usurping a corporate opportunity when they acquired and seized control of" the domain names and Web site. To the extent that this claim is based on any "misappropriation" of the Rosati marks, it fails and will be dismissed, pursuant to our discussion <u>supra</u>. But defendants present no convincing argument for dismissal of the claim insofar as it is based on the usurpation of a corporate opportunity; therefore, the claim will not be dismissed to the extent it is premised on that alleged conduct.

Because some of plaintiffs' claims have survived defendants' motion to dismiss, defendants' request for attorney's fees is denied.

## C. **Plaintiffs' Motion for Reassignment**

We proceed to consider plaintiffs' motion for reassignment of Case No. 05 C 6902, which is pending before Judge St. Eve. Local Rule 40.4 provides that two or more civil cases that are not class actions may be related if one or more of the following conditions are met: (1) they involve the same property; (2) they involve some of the same issues of fact or law; or (3) the cases grow out of the same transaction or occurrence. See N.D. Ill. L.R. 40.4(a). A related case may be reassigned to the judge before whom the lowest-numbered case of the claimed set is pending if "the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort . . . and the cases are susceptible of disposition in a single proceeding." N.D. Ill. L.R. 40.4(b).

In Case No. 05 C 6902, the minority shareholders (the three remaining defendants in the instant case) allege that the majority shareholders (the seven individual plaintiffs in the instant case) misused the Rosati's Marketing Cooperative, wrongfully deprived them of rebates from vendors, wrongfully franchised, wrongfully steered business away from them, and wrongfully used the Rosati's Web site to recruit sublicensees and franchisees. The instant

case, on the other hand, concerns the alleged misconduct of the minority shareholders in misusing the rosatispizza.com and rosatis.com domain names and Web site and in seizing the corporate opportunity that is represented by the domain names and Web site.

The case pending before Judge St. Eve is almost entirely concerned with the alleged acts of the majority shareholders that took place <u>prior</u> to the alleged acts of the minority shareholders in the instant case. The alleged acts of the majority may have prompted the alleged acts of the minority, but it appears that the allegations in the two cases are related only in that limited sense. Therefore, plaintiffs' motion for reassignment of Case No. 05 C 6902 will be denied, but without prejudice. We are willing to consider the motion again should discovery in the cases (which should be conducted without duplication) show that in fact they can efficiently be tried together.

## **CONCLUSION**

Defendants' motion to dismiss the complaint is granted in part and denied in part. The motion is granted as to Counts I, II, III, V, and VII. The motion is denied as to Count VI. The motion is granted in part and denied in part as to Counts IV and VIII; to the extent that those claims are premised on trademark infringement, false designation of origin, or misappropriation, they are dismissed, and to the extent that they are premised on false or

misleading statements of fact or usurpation of a corporate opportunity, they will not be dismissed.

The complaint is dismissed as against defendant Jeffrey Rosati.

Plaintiff's motion for reassignment based upon relatedness is denied without prejudice.


DATE:      January 17, 2006


ENTER:   _____

John F. Grady, United States District Judge